**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PORTIA MCCOLLUM, Derivatively on Behalf of Nominal Defendant THE ESTÉE LAUDER COMPANIES INC., | Case No. _______________ |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| WILLIAM P. LAUDER, CHARLENE BARSHEFSKY, STEPHANE DE LA FAVERIE, PAUL J. FRIBOURG, JENNIFER HYMAN, GARY M. LAUDER, JANE LAUDER, ARTURO NUÑEZ, BARRY S. STERNLICHT, JENNIFER TEJADA, RICHARD P. ZANNINO, FABRIZIO FREDA, and TRACEY T. TRAVIS, | |
| Defendants, | |
| and | |
| THE ESTÉE LAUDER COMPANIES INC., | |
| Nominal Defendant. | |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiff Portia McCollum ("Plaintiff"), by and through her undersigned counsel, alleges the following based upon personal knowledge as to matters concerning herself, and upon information and belief as to all others based on, *inter alia*, the investigation of counsel, which includes review and analyses of: (a) the filings of The Estée Lauder Companies Inc. ("Estée" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) news articles, press releases, conference call transcripts, analyst reports, and other publicly available information concerning the Company; and (c) the filings in the securities class action captioned *In re The Estée Lauder Companies Inc. Sec. Litig.,* Case No. 1:23-cv-10669-AS (S.D.N.Y.) (the

"Securities Action").

## NATURE OF THE ACTION

1. This stockholder derivative action is brought on behalf of Estée against certain current and former Company officers and members of the Company's Board of Directors (the "Board") for breaches of their fiduciary duties in issuing, causing to be issued, or permitting the issuance of materially false and misleading public statements concerning the Company's business, operations, and prospects, during the period of February 3, 2022, to October 31, 2023 (the "Relevant Period").

2. Estée is a global cosmetics company offering products under several brands, including Estée Lauder, Aramis, Clinique, La Mer, and Bobbi Brown Cosmetics. The Company sells its products through department stores, upscale perfumeries, pharmacies, salons and spas, airports and other duty-free locations, its own authorized retailer websites, and third-party online stores.

3. The Company's "travel retail" in Asia, including duty-free locations found in airports and cruise ships in China and South Korea, are critical to Estée's growth and performance. One particularly important area for the Company's travel retail business is China's southern island province of Hainan, a popular vacation destination.

4. For years, Estée—one of the world's leading prestige beauty companies— assured stockholders that sales growth within its critical Asia travel retail segment was driven by sustainable underlying demand for the Company's products and the strength of its brand. In reality, Estée had been supplying, and was growing dependent on, a pervasive, prohibited gray market resale industry in China and South Korea, called *daigou*, to drive sales within its Asia travel retail segment—an unsustainable practice that was concealed from stockholders. In 2019, Estée publicly

denied its use of *daigou* to inflate sales.

5. Resellers have fueled the Company's sales and growth for years, specifically in its travel retail business, through the large-scale purchasing of its products from duty-free stores for resale in mainland China. COVID-19 lockdowns, which lasted longer in China than in the United States, significantly reduced travel, thus reducing the accessibility of Estée's products to end consumers and hampering demand in its travel retail business. This made resellers even more critical to the Company's sales growth.

6. In early 2022, regulators in markets including China implemented new restrictions on resellers that rendered the resale business less profitable. These regulations led to a substantial decrease in the resale of Estée's products, causing inventory accumulation and stagnating sales growth. The Individual Defendants (defined below) concealed from stockholders the material effects that China's crackdown on *daigou* had on Estée's *daigou*-dependent travel retail business. For example, on May 3, 2022, Defendant Fabrizio Freda ("Freda") touted that the Company's "confidence into Hainan['s] future is unchanged, actually increased," concealing the fact that the actual source of Estée's success in Hainan, China—the epicenter of travel retail in China—was *daigou*, and that the Company's ability to generate the same level sales there had in fact changed negatively. As the Relevant Period progressed, each quarter Estée began issuing incrementally worse financial results related to its travel retail segment. Rather than reveal the real reason for these poor results, the Individual Defendants misleadingly reassured stockholders of the temporary nature of disruptions to Estée's now flailing travel retail sales.

7. During the Relevant Period, the Individual Defendants made a series of false and misleading statements to stockholders at the same time that Estée was experiencing a decline in net sales due to its over-reliance on gray market sales generated by *daigou* activity. Specifically,

rather than admit the truth about Estée's declining growth brought on by the inability to continue to rely on gray market sales, throughout the Relevant Period, the Individual Defendants made a series of misrepresentations concerning the true source of the Company's travel retail revenues, as well as the extent and cause of net sales declines in its Asia travel retail business.

8. Throughout the Relevant Period, the Individual Defendants issued statements that were materially false and misleading and omitted material adverse facts necessary to make the statements not misleading because they failed to disclose, *inter alia*, that: (i) the Company's revenue growth prior to the Relevant Period was largely fueled by resellers; (ii) new restrictions on resellers were causing them to purchase fewer Estée products; (iii) as a result, the Company was experiencing inventory accumulation and its sales were stagnating; (iv) the Company was forced to offload its excess inventory at discounted prices, driving down its margins; and (v) as a result of the foregoing, the Individual Defendant's positive statements regarding the Company's business, operations, and prospects lacked a reasonable basis.

9. The truth was slowly revealed over the span of a year from November 2022 until it was fully revealed in November 2023 when Estée announced financial results for its fiscal quarter ended September 30, 2023, wherein the Company disclosed a decline in sales attributable to its travel retail business.

10. On this news, the Company's stock declined nearly 19% in one day, closing at $104.51 on November 1, 2023.

11. The Individual Defendants, by making and/or causing the Company to make to the investing public a series of materially false and misleading statements about Estée's business, operations, and prospects, breached their fiduciary duties to the Company.

12. The Individual Defendants also breached their fiduciary duties by causing the Company to fail to maintain adequate internal controls. The Individual Defendants failed to correct and/or caused the Company to fail to correct these false and misleading statements and omissions of material fact, rendering them personally liable to the Company for breaching their fiduciary duties.

13. As a result of the foregoing, the Securities Action was filed against the Company and certain of its executive officers. In addition to incurring significant costs to defend itself in that action, the Securities Action has exposed the Company to massive class-wide liability. The detailed confidential witness accounts of former Estée employees ("FEs") in the complaint in the Securities Action confirmed that the Company became reliant on *daigou* to grow sales in its travel retail business.

14. On March 31, 2025, the Court denied the Securities Action defendants' motion to dismiss the Consolidated Amended Class Action Complaint. Securities Action, ECF No. 58 (the "MTD Order"). In denying defendants' motion to dismiss, Judge Subramanian concluded that the nine sets of defendants' public representations challenged in the Securities Action complaint (made on February 3, 2022, May 3, 2022, June 2, 2022, August 18, 2022, November 2, 2022, February 2, 2023, May 3, 2023, and August 18, 2023) contained "actionable statements", including "misleading omissions", and were "mired in half-truths." *See* MTD Order 5. In so finding, among other things, Judge Subramanian specifically credited the FE accounts and rejected the defendants' attempts to "discredit plaintiffs' allegations about three anonymous former employees." *Id.* at 8. Further, Judge Subramanian concluded that the Securities Action complaint sufficiently alleged scienter as to Defendants Freda and Tracey T. Travis ("Travis"). *See id.* at 12-14. The Securities

Action parties subsequently agreed in 2026 to a proposed $210 million settlement, which remains pending.

15. In addition to the costs and expenses related to defending itself against the Securities Action and exposing Estée to potential liability for class-wide damages, the Individual Defendants' misconduct has caused the Company to waste corporate assets and enabled the Individual Defendants who were improperly overcompensated by the Company to unjustly enrich themselves.

16. This derivative action further arises from the Board's breaches of its fiduciary duties by failing to diligently investigate in response to Plaintiff's pre-suit litigation demand from June 2024 (the "Litigation Demand") and/or complete an investigation within a reasonable time period.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b), 20(a), and 21D of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b), 78t(a), § 78u-4(f)).

18. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

19. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

20. In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Nominal

Defendant Estée is headquartered in this District and conducts substantial business in this District. Further, a substantial portion of the acts and omissions alleged herein, including the issuance and dissemination of materially false and misleading information, occurred in this District. Moreover, the Securities Action is currently pending, and is seeking settlement, in this District. Additionally, Estée's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in New York.

## PARTIES

***Plaintiff***

22. Plaintiff is, and has been at all relevant times, a continuous shareholder of Estée.

***Nominal Defendant***

23. Nominal Defendant Estée is incorporated under the laws of Delaware with its principal executive offices located at 767 Fifth Avenue, New York, New York 10153. Estée's common stock trades on the NYSE, which is headquartered in New York, New York, under the ticker symbol "EL."

***Individual Defendants***

24. Defendant William P. Lauder ("W. Lauder") has served as a member of the Board since 1996 and currently serves as Chairman of the Board. Previously, defendant W. Lauder served as the Company's CEO from 2004 to 2009, and as its Executive Chairman from 2009 until November 2024. Defendant W. Lauder serves as a member of the Nominating and Environmental, Social and Governance ("ESG") Committee. Defendant W. Lauder has previously served as Estée's Chief Executive Officer ("CEO") between 2004 and 2009, as its President between 2004 and 2008, and as its Chief Operating Officer ("COO") between 2003 and 2004. Defendant W. Lauder is the grandson of Company founders Estée and Joseph Lauder, the son of Leonard Lauder, and the brother of Defendant Gary M. Lauder ("G. Lauder"). According to the Company's public

filings, Defendant W. Lauder received $7,803,992 in compensation from the Company during the fiscal year ended June 30, 2023.

25. Defendant Charlene Barshefsky ("Barshefsky") has served as a member of the Board since 2001 and serves as a member of the Compensation Committee. According to the Company's public filings, Defendant Barshefsky received $382,014 in compensation from the Company during the fiscal year ended June 30, 2023.

26. Defendant Stephane de La Faverie ("de La Faverie") has served as a member of the Board and as Estée's President and CEO since January 2025. Defendant de La Faverie joined the Company in 2016 and served previously in various roles, including Executive Group President from September 2022 through December 2024.

27. Defendant Paul J. Fribourg ("Fribourg") has served as a member of the Board since 2006. Defendant Fribourg also serves as Chair of the Board's Compensation Committee and as a member of the Company's Audit Committee. According to the Company's public filings, Defendant Fribourg received $309,926 in compensation from the Company during the fiscal year ended June 30, 2023.

28. Defendant Jennifer Hyman ("Hyman") has served as a member of the Board since 2018. Defendant Hyman also serves as a member of the Board's Audit Committee and Nominating and ESG Committee. According to the Company's public filings, Defendant Hyman received $286,926 in compensation from the Company during the fiscal year ended June 30, 2023.

29. Defendant G. Lauder has served as a member of the Board since 2023. Defendant G. Lauder is the brother of Defendant W. Lauder.

30. Defendant Jane Lauder ("J. Lauder") has served as a member of the Board since 2009. Defendant J. Lauder joined the Company in 1996 and served previously in various roles,

including Executive Vice President ("EVP"), Enterprise Marketing and Chief Data Officer from 2020 through December 2024. Defendant J. Lauder is the granddaughter of founders Estée and Joseph Lauder and the daughter of Ronald Lauder, the sole heir to Estée.

31. Defendant Arturo Nuñez ("Nuñez") has served as a member of the Board since 2022. Defendant Nuñez also serves as a member of the Board's Audit Committee and Compensation Committee. According to the Company's public filings, Defendant Nuñez received $586,926 in compensation from the Company during the fiscal year ended June 30, 2023.

32. Defendant Barry S. Sternlicht ("Sternlicht") has served as a member of the Board since 2004. Defendant Sternlicht also serves as a member of the Board's Nominating and ESG Committee. According to the Company's public filings, Defendant Sternlicht received $282,926 in compensation from the Company during the fiscal year ended June 30, 2023.

33. Defendant Jennifer Tejada ("Tejada") has served as a member of the Board since 2018. Defendant Tejada also serves as Chair of the Board's Nominating and ESG Committee. According to the Company's public filings, Defendant Tejada received $283,926 in compensation from the Company during the fiscal year ended June 30, 2023.

34. Defendant Richard F. Zannino ("Zannino") has served as a member of the Board since 2010. Defendant Zannino also serves as Chair of the Board's Audit Committee. According to the Company's public filings, Defendant Zannino received $313,926 in compensation from the Company during the fiscal year ended June 30, 2023.

35. Defendant Freda joined the Company in 2008 as its President and COO and subsequently assumed the position of CEO in 2009. Defendant Freda served as the Company's President and CEO and as a member of the Board from 2009 until his retirement was announced in August 2024. Defendant Freda is named as an individual defendant in the Securities Action,

and has had claims for federal securities fraud sustained against him in that case. According to the Company's public filings, Defendant Freda received $21,811,244 in compensation from the Company during the fiscal year ended June 30, 2023.

36. Defendant Travis served as EVP and Chief Financial Officer ("CFO") of Estée from 2012 until she announced her retirement in July 2024. Defendant Travis is named as an individual defendant in the Securities Action, and she has had federal securities fraud claims sustained against her in that case. According to the Company's public filings, Defendant Travis received $8,331,309 in compensation from the Company during the fiscal year ended June 30, 2023.

37. Defendants W. Lauder, Barshefsky, de La Faverie, Fribourg, Hyman, G. Lauder, J. Lauder, Nuñez, Sternlicht, Tejada, Zannino, Freda, and Travis are collectively referred to herein as the "Individual Defendants."

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

38. By reason of their positions as officers and directors of Estée, and because of their ability to control the business and corporate affairs of Estée, the Individual Defendants owed Estée and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Estée in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Estée and its shareholders so as to benefit all shareholders equally.

39. Each director and officer of the Company owes to Estée and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

40. The Individual Defendants, because of their positions of control and authority as officer and directors of Estée, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

41. To discharge their duties, the officers and directors of Estée were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

42. Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed the Company and its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Estée, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

43. As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's supply chain issues resulting from regulations in the travel retail industry. The Individual Defendants also had a fiduciary duty to disclose the material information necessary to prevent other public statements, including those in its regulatory filings

with the SEC, from being materially false, so that the market price of the Company's common stock was based upon truthful, accurate, and fairly presented information.

44. To discharge their duties, the officers and directors of Estée were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Estée were required to, among other things:

(a) ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Estée's own Code of Conduct;

(b) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) remain informed as to how Estée conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d) establish and maintain systematic and accurate records and reports of the business and internal affairs of Estée and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e) maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Estée's operations would comply with all applicable laws and Estée's public statements, financial statements and regulatory filings were accurate;

(f) adequately monitor the Company's officers and employees to ensure their public statements about the Company were complete and accurate;

(g) refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h) examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

45. The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Estée.

46. Each of the Individual Defendants breached his or her fiduciary duties as alleged herein, both individually and in concert with the other Defendants.

**ESTÉE'S CODE OF BUSINESS CONDUCT**

47. Estée's Code of Conduct begins with a message from Defendants Freda and W. Lauder which states, in pertinent part: "As a global leader, our Company is committed to operating responsibly and building a sustainable business based on uncompromising ethics, integrity, fairness, and trust."

48. Estée's Code of Conduct applies to "all employees and officers of The Estée Lauder Companies, Inc., including our global subsidiaries and affiliates, and the members of our Board of Directors," and violations of the Code may result in "disciplinary action, up to and including termination of employment."

49. In a subsection titled "EVERYONE'S RESPONSIBILITIES," the Code of Conduct states, in pertinent part: "We expect everyone to whom our Code applies to conduct our business

with uncompromising ethics and integrity, in compliance with the laws and regulations of the countries where we operate."

50. In a subsection titled "ENSURE THE INTEGIRTY OF OUR BOOKS, RECORDS AND FINANCIAL REPORTS," the Code of Conduct states, in pertinent part:

> As a publicly traded company, by law, we are required to publicly disclose certain important information about our Company. When we publicly disclose this information, it is our responsibility to do so in a fair, complete, accurate, timely, and understandable way. We are legally required to be honest and accurate in our financial records, and regulators, investors, and others rely on us to report financial information truthfully, completely, and timely.
>
> We must keep accurate books and records, including legal documents, that maintain the integrity of our financial reporting. Employees are prohibited from:
>
> - Making false, misleading, or incomplete statements in connection with an audit of our Company or a filing with the U.S. Securities and Exchange Commission or other government body.

## **ESTÉE'S AUDIT COMMITTEE CHARTER**

51. The Company's Audit Committee Charter states that the purpose of the Audit Committee is to "review[] the internal and external accounting and audit processes for The Estée Lauder Companies, Inc."

52. The Audit Committee Charter tasks the Audit Committee with:

> [A]ssist[ing] the Board in fulfilling its responsibilities to oversee the:
>
> 1. Integrity of the Company's financial statements;
> 2. Company's compliance with legal and regulatory requirements;
> 3. Independent auditor's qualifications and independence;
> 4. Performance of the Company's internal audit function and independent auditor; and
> 5. Company's policies for risk assessment and risk management.

53. In a subsection titled "***Audit and Audit-Related Matters***," the Audit Committee Charter states that the Audit Committee shall:

> Review and discuss with management and the independent auditor the annual audited financial statements and the quarterly financial statements to be included in

> the Company's periodic reports, including the disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," and review with the independent auditor the matters required to be discussed by applicable auditing standards."

54. In a subsection titled "***Internal Audit***," the Audit Committee Charter states that the Audit Committee shall: "Approve and oversee the charter, policies, and scope of audit plans of the Company's internal audit department."

55. In a subsection titled "***Risk Oversight***," the Audit Committee Charter states that the Audit Committee shall: "Review and discuss with management, the independent auditor, and the Board the Company's policies with respect to risk assessment and risk management, as well as any significant risks or exposures and the steps management has taken to monitor and control such exposures."

56. In a subsection titled "***Other Matters***," the Audit Committee states that the Audit Committee shall:

> In connection with the quarterly certifications by the Chief Executive Officer and Chief Financial Officer ("CFO"), receive reports from such officers regarding (i) significant deficiencies in the design or operation of internal controls which could adversely affect the Company's ability to record, process, summarize, and report financial data; (ii) material weaknesses in internal controls; and (iii) any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal controls.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

57. In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

58. The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct were, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; (ii) conceal adverse information concerning the Company's operations, financial condition, future business prospects and internal controls; and (iii) artificially inflate the Company's stock price.

59. The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or with gross negligence to engage in improper accounting methods, conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. The Individual Defendants described herein were direct, necessary, and substantial participants in the common enterprise, and/or common course of conduct complained here because the action described herein occurred under the authority and approval of the Board.

60. Each of the Individual Defendants aided, abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in or substantially assisted the accomplishment of that wrongdoing and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

61. At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and Estée and was at all times acting within the course and scope of such agency.

**SUBSTANTIVE ALLEGATIONS**

***Background***

62. Estée is a global cosmetics company offering products under several brands, including Estée Lauder, Aramis, Clinique, La Mer, and Bobbi Brown Cosmetics. The Company sells its products through department stores, upscale perfumeries, pharmacies, salons and spas, airports and other duty-free locations, its own authorized retailer websites, and third-party online stores.

63. The Company's "travel retail" in Asia, including duty-free locations found in airports and cruise ships in China and South Korea, are critical to Estée's growth and performance. One particularly important area for the Company's travel retail business is China's southern island province of Hainan, a popular vacation destination.

64. Resellers have fueled the Company's sales and growth for years, specifically in its travel retail business, through the large-scale purchasing of its products from duty-free stores for resale in mainland China. COVID-19 lockdowns, which lasted longer in China than in the United States, significantly reduced travel, thus reducing the accessibility of Estée's products to end consumers and hampering demand in its travel retail business. This made resellers even more critical to the Company's sales growth.

65. In early 2022, regulators in markets including China implemented new restrictions on resellers that rendered the resale business less profitable. The regulations led to a substantial decrease in the resale activity on which Estée had come to rely upon, causing inventory accumulation and stagnating sales growth.

66. During the Relevant Period, the Individual Defendants made a series of false and misleading statements to stockholders at the same time that Estée was experiencing a decline in net sales due to its over-reliance on gray market sales generated by *daigou* activity. Specifically,

rather than admit the truth about Estée's declining growth brought on by the inability to continue to rely on gray market sales, throughout the Relevant Period, the Individual Defendants made a series of misrepresentations concerning the true source of the Company's Travel Retail revenues, as well as the extent and cause of net sales declines in its Asia travel retail business.

***Materially False and Misleading Statements***

67. The Relevant Period begins on February 3, 2022, when Estée announced financial results for the fiscal quarter ended December 31, 2022. During the related earnings call, Defendant Freda claimed that the Company was "prosper[ing] in the East with Chinese consumers as well as in global Travel Retail." Defendant Freda further stated that management was "excited about the long-term growth opportunity in the vibrant Asia-Pacific region and, most notably, in China." During the call, Defendant Travis, Estée's EVP and CFO, touted the Company's business in Hainan specifically, stating that it "continues to be a very strong driver of our travel retail business." Defendant Freda continued, stating "travel retail globally was strong and was accelerating . . . Hainan was very strong, as [Travis] was stating."

68. On May 3, 2022, Estée announced financial results for its fiscal quarter ended March 31, 2022. During the related earnings call, Defendant Freda attributed the Company's growth to "demand across channels from brick and mortar to online and travel retail" and maintained that "China consumer demand underlining this moment of COVID restrictions is strong." Further, after Defendant Travis assured investors that the Company "expect[s] continued growth in both Mainland China and Hainan," Defendant Freda agreed that Estée's "confidence into Hainan [in the] future is unchanged." The Individual Defendants continued to represent to stockholders that the Company's "confidence into Hainan['s] future is unchanged[,] actually increased." This statement was false and misleading because it represented an "unchanged"

landscape in Hainan despite the loss of *daigou* sales having materially altered Estée's ability to maintain its travel retail sales through traditional retail exchanges.

69. As travel retail sales diminished, the Individual Defendants also misled stockholders through statements attributing Estée's prior sales growth in travel retail on Hainan to customers engaging in above-board travel retail purchases. For example, on June 2, 2022, Defendant Freda spoke at the Bernstein Strategic Decisions Conference, where he credited Estée's "incredible results in travel retail during the COVID Western lockdowns" to the fact that "Hainan was more than substituting the amount of travelers in airports around the world." During the conference, Defendant Freda fielded questions about China's current 2022 lockdowns, which he compared to past lockdowns "in the US, in Europe during 2020." In doing so, Defendant Freda attributed Estée's previous "incredible results in travel retail during the COVID Western lockdowns" in 2020 to Hainan supplanting airport travelers globally at that time. However, this statement was materially false and misleading because *daigou* gray market resale was the true source of Estée's travel retail growth in Hainan at that time in 2020, which did not equate to "travelers in airports" at all. Rather, Estée's prior, formidable travel retail sales figures were attributable to the corporate *daigou* industry and its gray market reselling. The Individual Defendants capped off Estée's fourth quarter with similar sentiments lauding the success of Hainan while concealing from stockholders the severe impact the closed pipeline to the *daigou* gray market had on Company sales.

70. On August 18, 2022, Estée announced financial results for the fiscal quarter and year ended June 30, 2022, disclosing a 9% increase in net sales and an 8% increase in organic net sales from the prior-year period. The Company announced that it would be implementing strategic price increases, mix optimization, and cost savings in certain areas to mitigate the impacts of

inflation, supply chain disruptions, and COVID-19 headwinds. During the related earnings call held the same day, Defendant Freda claimed that the Company was anticipating robust growth and profitability for the upcoming year, stating "our more effective cost structure, pricing power and strong cash generation should afford us the flexibility to successfully navigate the ongoing complex environment." Defendant Freda further stated that management was "confident in the long-term opportunity in Mainland China, evidenced by our expansion into almost 100 new doors and 3 additional cities in fiscal year 2022." In response to a question regarding the Company's "underlying market share performance in China . . . as supply returns to normal," Defendant Freda stated:

> [W]e do expect for the full year, China to go back growing double digit. We expect strong recovery in Hainan in the second part, in the second semester of the fiscal year, for sure, a gradual recovery before. That's our assumption, which obviously is going to give us also results in market share.
>
> * * *
>
> We believe the Hainan -- despite the current lockdown, which is obviously painful in the short term, but is a super strong opportunities for the long term, the power of Hainan in the future remain intact, and we have strong presence and market share in this operation.

71. On August 24, 2022, Estée filed its Annual Report on Form 10-K with the SEC (the "2022 Annual Report"), signed by Defendants Freda, Travis, W. Lauder, J. Lauder, Barshefsky, Fribourg, Hyman , Nuñez, Sternlicht, Tejada, and Zannino. The 2022 Annual Report contained the following generic and misleading risk disclosure regarding the Company's travel retail business: "Events that impact consumers' willingness or ability to travel or purchase our products while traveling ***may impact our business, including travel retail***, a significant contributor to our overall results, and our strategy to market and sell products to international travelers at their

destinations."[1]

72. The 2022 Annual Report further stated:

> We approach distribution strategically by product category and location and seek to optimize distribution by matching our brands with appropriate opportunities while seeking to maintain high productivity per door. ***We are expanding our brands in online and travel retail, which we believe will be higher growth channels in the long term.***

73. The Individual Defendants' statements identified above were also materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) the Company's revenue growth prior to the Relevant Period was largely fueled by resellers; (ii) new restrictions on resellers were causing them to purchase fewer Estée products; (iii) as a result, the Company was experiencing inventory accumulation and its sales were stagnating; (iv) the Company was forced to offload its excess inventory at discounted prices, driving down its margins; and (v) as a result of the foregoing, the Individual Defendant's positive statements regarding the Company's business, operations, and prospects lacked a reasonable basis.

***The Truth Gradually Emerges***

74. The truth began to emerge, through a series of partial disclosures in late 2022 and 2023. As Estée's ability to use *daigou* gray market resellers to generate sales evaporated, its inventory piled up, forcing the Individual Defendants to repeatedly issue lowered revenue forecasts. Throughout the Relevant Period, the Individual Defendants represented to stockholders that a host of other issues were driving Estée's declining sales: episodic lockdowns due to COVID-19 variant surges, supply chain issues, retailers tightening inventory, and inflation, among others. The Individual Defendants' disclosure of those issues misleadingly concealed the actual root cause

---

[1] All emphasis is added unless otherwise indicated.

of Estée's travel retail sales declines — the inability to rely on the *daigou* gray market to prop up sales.

75. On November 2, 2022, the Company issued a press release announcing financial results for its fiscal quarter ended September 30, 2022. In the press release, the Company revised its financial guidance downward for 2023 "primarily to reflect tighter inventory management in Asia travel retail." The press release continued:

> The Company expects the remainder of the fiscal year to be pressured by the temporary disruptions due to headwinds from the COVID-19 restrictions in China, the strengthening of the U.S. dollar, record-high inflation, supply chain disruptions, and the risk of a slowdown in certain markets globally.
>
> * * *
>
> The Company expects its first-half results to be negatively impacted by the ongoing challenges from the COVID-related restrictions affecting Asia travel retail, including tightening of retailer inventory, and mainland China. The Company also expects the tightening of inventory in the United States to negatively impact its first-half results.

76. On this news, the price of Estée common stock declined more than 8% in one day, closing at $189.96 on November 2, 2022.

77. Despite this disclosure, the Individual Defendants continued to issue false and misleading statements, concealing the full extent of the Company's issues. During the Company's earnings call held on November 2, 2022, Defendant Freda claimed that management "expect[s] a gradual sequential improvement to low double-digit organic sales growth and high teens adjusted EPS growth on a reported basis in the second half of fiscal year 2023. As these pressures begin to abate, the momentum in other areas of our business builds and our ongoing investments drive growth."

78. On February 2, 2023, in a press release announcing financial results for the fiscal quarter ended December 31, 2022, the Company again lowered its guidance for fiscal year 2023

due to supply chain issues and issues in its travel retail business:

> For fiscal 2023, we are lowering our outlook given the November and December disruption to travel and staffing levels in Hainan that slowed the expected normalization of inventory and the recently- announced potential roll-back of COVID-related supportive measures in Korea duty free.

79. On this news, the price of Estée common stock declined 7% in one day, closing at $261.17 on February 6, 2023.

80. However, the Individual Defendants continued to downplay the issue. During the Company's earnings call held the same day, in response to a question regarding Estée's supply chain management in China, Defendant Travis stated:

> One, inventory levels are still coming down in Hainan. They are almost at the level that we would expect sales to accelerate. So yes, you should start to see an inventory build related to the shipments that we expect to see in Q4. In Korea, again, the pace is a little bit more uncertain given the transitory nature of what's going on right now.
>
> So we do anticipate, as I mentioned in the prepared remarks, that we will start to see resumption of travel in Korea. And depending on the pace of that resumption, that will depend on the amount of shipments that we have in the quarter. But we have taken obviously an assumption there. We are sitting on a decent amount of inventory even in our own warehouses to supply the sales that we expect to see in the fourth quarter.

81. Defendant Freda also touted Estée's increase in market share and retail sales in China, stating:

> And so China, the results in the quarter were pretty good. We built significant market share. So the overall market in China was negative double digit. Our net sales were -- and our retail was negative single digit, and we built market share in every single category. So in most risers, we build market share in makeup, in fragrance, in health care, in every aspect. Now this, for us, is a very important sign that the -- our brands are really working. The aspirational value of our brands remains very, very strong, which in the moment of reopening is a very strong position to be. So excellent performance relatively to market.

82. On May 3, 2023, in a press release announcing financial results for the fiscal quarter ended March 31, 2023, the Company again lowered its guidance for fiscal year 2023 due to

persistent issues in the Company's travel retail business:

> As the shape of recovery from the pandemic for Asia travel retail comes into better focus, it is proving to be both far more volatile than we expected and more gradual relative to what we experienced in other regions. We are, therefore, lowering our organic sales and EPS outlook for fiscal 2023 to reflect significantly greater headwinds in our fourth quarter than we expected in February.

83. The press release stated that the Company's "Asia travel retail business continued to be pressured by the slower than anticipated recovery from the COVID pandemic. Specifically, in Hainan, while traffic into the island exceeded prior year levels, conversion of travelers to consumers in prestige beauty lagged. This led to the slower than anticipated depletion of elevated levels of retailer inventory and, therefore, lower replenishment orders."

84. During the related earnings call held the same day, in response to a question regarding the Company's reduced guidance, Defendant Freda claimed:

> [I]n theory it's really an issue of inventories versus pace of recovery. Another proof of that is our retail in travel retails is so much stronger than our net. So, you have a minus 45% in Quarter 3 versus a single- digit decline in retail. So, there is a lot of inventory absorption which is going on with the recovery. And, a lot of the speed of this absorption will depend on the speed of the recovery that we have in front in us. We are estimating that given the trend in this period in the Quarter 4, retail will go positive, and then, the absorption will continue to improve over time, and definitely continue in Quarter 1 of next fiscal year.

85. Analysts at Deutsche Bank reacted negatively to the Company lowering its guidance for the third consecutive quarter, stating "[w]hile we appreciate the complexity of current challenges in EL's travel retail (TR) business, the sheer magnitude of the reduced outlook and associated operating deleverage raises questions related to EL's capabilities vis-à-vis demand forecasting, visibility, and supply-chain agility in its most profitable geography and channel."

86. On this news, the price of Estée common stock declined 17% in one day, closing at $202.70 on May 3, 2023.

87. The price of Estée common stock remained artificially inflated however, as the

Individual Defendants continued to issue false and misleading statements. For example, during the May 3, 2023 earnings call, Defendant Freda claimed that "the challenges in travel retail are abating."

88. On August 18, 2023, Estée announced financial results for its fiscal quarter and year ended June 30, 2023, including a substantial decrease in sales largely attributable to the travel retail markets in China and South Korea. On this news, the price of Estée common stock declined 3.3%, closing at $156.69 on August 18, 2023.

89. However, the Individual Defendants continued to issue false and misleading statements. During the related earnings call held the same day, Defendant Freda claimed that management believed Estée was "well positioned to return to organic sales growth and improve profitability." Defendant Freda further claimed that Estée had "created the base of much more information and timely information to take the right decisions in coordination[,]" regarding its travel retail business.

90. The Individual Defendants' statements identified above were also materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) the Company's revenue growth prior to the Relevant Period was largely fueled by resellers; (ii) new restrictions on resellers were causing them to purchase fewer Estée products; (iii) as a result, the Company was experiencing inventory accumulation and its sales were stagnating; (iv) the Company was forced to offload its excess inventory at discounted prices, driving down its margins; and (v) as a result of the foregoing, the Individual Defendant's positive statements regarding the Company's business, operations, and prospects lacked a reasonable basis.

***The Truth is Fully Revealed***

91. The truth fully emerged on November 1, 2023, when Estée announced financial results for its fiscal quarter ended September 30, 2023. The Company disclosed a decline in sales attributable to its Asia travel retail business. The Company further disclosed that inventory issues were preventing it from effectively responding to changes in the market. In connection with these disclosures, Estée cut its net sales estimate for fiscal year 2024.

92. On this news, the price of Estée common stock declined nearly 19% in one day, closing at $104.51 on November 1, 2023.

***Share Repurchases***

93. According to the Company's public filings, while the price of the Company's stock was artificially inflated due to the false and misleading statements detailed above, the Individual Defendants caused the Company to repurchase approximately 3.4 million shares of its own stock for a total of approximately $880 million during the Relevant Period.

94. According to the Company's quarterly and annual reports filed on Forms 10-Q and 10-K with the SEC, Estée made the following repurchases of its own stock during the Relevant Period:

| Dates of Stock Repurchases | Number of Shares Repurchased | Average Price Per Share on Date of Repurchase | Total Cost of Repurchase |
|---|---|---|---|
| February 2022 | 365,988 | $303.78 | $111,179,834 |
| March 2022 | 673,197 | $273.06 | $183,823,172 |
| April 2022 | 617,017 | $266.80 | $164,620,135 |
| May 2022 | 339,298 | $244.73 | $83,036,399 |
| June 2022 | 251,044 | $249.51 | $62,637,988 |
| July 2022 | 215,000 | $252.79 | $54,349,850 |
| August 2022 | 51,540 | $267.25 | $13,774,065 |
| September 2022 | 173,300 | $243.41 | $42,182,953 |
| October 2022 | 287,111 | $211.33 | $60,675,167 |
| November 2022 | 420,683 | $205.04 | $86,256,842 |
| January 2023 | 5,100 | $270.02 | $1,377,102 |
| February 2023 | 104 | $242.00 | $25,168 |
| March 2023 | 93 | $247.34 | $23,002 |

| | | | |
|---|---|---|---|
| April 2023 | 882 | $254.82 | $224,751 |
| May 2023 | 1,089 | $195.53 | $212,932 |
| June 2023 | 65,830 | $194.76 | $12,821,050 |
| August 2023 | 19,580 | $155.96 | $3,053,696 |
| October 2023 | 872 | $127.62 | $111,284 |

95. Given that the price of Estée stock was $104.51 per share on November 1, 2023, after the corrective disclosures were made, the true value of the 3.4 million repurchased shares was roughly $364.5 million. Accordingly, the Individual Defendants caused the Company to overpay approximately $515.5 million to repurchase these shares during the Relevant Period.

***Harm to the Company***

96. As a direct and proximate result of the Individual Defendants' misconduct, Estée has lost and expended, and will lose and expend, millions of dollars.

97. Such expenditures include, but are not limited to, the legal fees associated with the Securities Action that was filed against the Company and Defendants Freda and Travis, and amounts paid to outside lawyers, accountants, and investigators in connection therewith.

98. Such expenditures also include, but are not limited to, significant compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

99. Furthermore, the Securities Action has exposed the Company to potential massive class-wide liability.

## DERIVATIVE AND DEMAND REFUSED ALLEGATIONS

100. Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

101. Estée is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

102. Plaintiff is a current shareholder of Estée and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

103. Plaintiff issued the Litigation Demand to the Board in June 2024 demanding that the Board conduct an independent, good faith investigation and take action on behalf of the Company against the Individual Defendants and hold such individuals to account for the damages their fiduciary failures caused.

104. In response to a pre-suit demand, directors of a Delaware corporation must promptly investigate and evaluate the charges to discharge their duties to shareholders and manage corporate affairs responsibly. The directors must conduct an objective and thorough investigation. Directors are fiduciaries, and thus they are duty-bound to inform themselves properly before making business decisions.

105. More than a year and a half has transpired since Plaintiff issued the Litigation Demand to the Board, during which the Securities Action was sustained in its entirety notwithstanding the materially heightened PSLRA pleading standards, leading to a proposed $210 million settlement of the Securities Action. Yet, the Board has failed to investigate any of the issues identified in the Litigation Demand or even respond to the Litigation Demand.

106. The Board's failure to complete an investigation after more than a year and a half into the serious allegations of wrongdoing identified in the Litigation Demand – allegations which supported a complete denial of defendants' motion to dismiss in the Securities Action, leading to a proposed $210 million settlement – amounts to a constructive, wrongful refusal of the Litigation Demand and a failure to protect and preserve the Company's corporate assets, in violation of the

Board's fiduciary duties to Lauder and its stockholders.

## COUNT I

**Against the Individual Defendants for Violations of § 10(b) of the Exchange Act (15 U.S.C. § 78(j)) and Rule 10b-5 (17 C.F.R. § 240.10b-5)**

107. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

108. The Individual Defendants participated in a scheme with the purpose and effect of defrauding Estée. Not only is Estée now defending claims that it violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, but the Company itself is also one of the largest victims of the unlawful scheme perpetrated upon Estée by the Individual Defendants.

109. During the Relevant Period, while the price of the Company's stock was artificially inflated as a result of the false and misleading statements issued, the Individual Defendants caused the Company to overpay by over $515.5 million to repurchase approximately 3.4 million shares of Estée common stock.

110. The Individual Defendants also individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct designed to falsify the Company's press releases, public statements, and periodic and current reports filed with the SEC.

111. The Individual Defendants employed devices, schemes, and artifices to defraud while in possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included that making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Estée not misleading.

112. The Individual Defendants, as directors and officers of the Company, are liable as direct participants in the wrongs complained herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to, and did, control the conduct complained of herein and the content of the public statements disseminated by Estée.

113. The Individual Defendants acted with scienter during the Relevant Period, in that they either had actual knowledge of the scheme and the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were the top executives of the Company, or received direct briefings from them, and were therefore directly responsible for the scheme set forth herein and for the false and misleading statements and/or omissions disseminated to the public through filings with the SEC.

114. The Individual Defendants, through their violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5), have caused the Company to expend over $880 million in the repurchase of Estée stock at artificially inflated prices and have exposed the Company to millions of dollars in potential class wide damages in the Securities Action.

115. By virtue of the foregoing, the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

116. Plaintiff, on behalf of Estée, has no adequate remedy at law.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a))**

117. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

118. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act. By virtue of their positions of control within the Company, the Individual Defendants had the authority to cause the Company to issue materially false and misleading statements, and to repurchase Estée stock at prices artificially inflated by those materially false and misleading statements.

119. Plaintiff, on behalf of Estée, has no adequate remedy at law.

## COUNT III

**Against Defendants Freda and Travis for Contribution Under Sections 10(b) and 21D of the Exchange Act**

120. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

121. Estée, along with Defendants Freda and Travis (the "Officer Defendants"), were named as defendants in the fully sustained Securities Action, which asserted claims under the federal securities laws for violations of Sections 10(b) and 21D of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder.

122. The Securities Action alleged that the class members relied, directly or indirectly, upon the false and misleading statements and omissions, as alleged herein, in purchasing Estée securities. The Securities Action further alleged that, as a direct and proximate result, the class members suffered damages because the value of their investments were artificially inflated by the false and misleading statements and omissions, they purchased such securities at the artificially inflated prices, and the value of their investments fell when the truth was eventually revealed, causing economic losses to the class members.

123. The complaint in the Securities Action was sustained in its entirety by this Court, notwithstanding the materially heightened pleading standards applicable pursuant to the PSLRA.

124. The Company is now a party to the proposed $210 million settlement of the Securities Action, in whole or in part due to the Officer Defendants' willful and/or reckless violations of their obligations as officers and/or directors of the Company.

125. The Officer Defendants, because of their positions of control and authority as senior executive officers of the Company, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts complained of herein and in the Securities Action.

126. Accordingly, the Officer Defendants are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

127. As such, the Company is entitled to receive all appropriate contribution or indemnification from the Officer Defendants.

128. Plaintiff, on behalf of Estée, has no adequate remedy at law.

## COUNT IV

**Against the Individual Defendants**
**for Breach of Fiduciary Duty**

129. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

130. The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

131. The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

132. The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

133. As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

134. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Action, exposing the Company to millions of dollars in class-wide damages in the Securities Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

135. Plaintiff, on behalf of Estée, has no adequate remedy at law.

## COUNT V

### Against the Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty

136. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

137. By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

138. Plaintiff, on behalf of Estée, has no adequate remedy at law.

**COUNT VI**

**Against the Individual Defendants for Unjust Enrichment**

139. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

140. By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Estée.

141. The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Estée that was tied to the performance or artificially inflated valuation of Estée, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

142. Plaintiff, as a shareholder and a representative of Estée, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of

their fiduciary and contractual duties.

143. Plaintiff on behalf of Estée has no adequate remedy at law.

**COUNT VII**

**Against the Individual Defendants**
**for Waste of Corporate Assets**

144. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

145. The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue. It resulted in continuous, connected, and ongoing harm to the Company.

146. As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, inter alia: (a) paying and colleting excessive compensation and bonuses; and (b) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Action.

147. As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

148. Plaintiff on behalf Estée has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A. Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B. Directing all Individual Defendants to account for all damages caused by them and

all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C. Directing Estée to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its stockholders from a repeat of the damaging events described herein, including, but not limited to:

- strengthening the Board's supervision of operations and compliance with applicable state and federal laws and regulations;
- strengthening the Company's internal reporting and financial disclosure controls;
- developing and implementing procedures for greater shareholder input into the policies and guidelines of the Board; and
- strengthening the Board's internal operational control functions;

D. Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: September 22, 2026

**RIGRODSKY LAW, P.A.**

By: */s/ Vincent A. Licata*
Gina M. Serra
Vincent A. Licata
225 Broadway, Suite 3707

**OF COUNSEL:**

**GRABAR LAW OFFICE**

Joshua H. Grabar
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
Email: jgrabar@grabarlaw.com

New York, NY 10007
(212) 201-7690
Email: gms@rl-legal.com
vl@rl-legal.com

*Attorneys for Plaintiff*